[Civ. No. 8528.   Third Dist.   Jan. 27, 1956.]

JACK YATES, Respondent, v. JEANNETTE L. YATES, Appellant.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Appellant.

Tebbe & Correia, G. A. Tebbe, George G. Tyler and M. H. Messner for Respondent.

SCHOTTKY, J.—Respondent husband commenced an action against appellant wife seeking a divorce on the ground of extreme cruelty and also seeking custody of the couple's

three minor children, aged, 5, 4 and 3. Appellant filed a cross-complaint also seeking a divorce and the custody of the minor children.

Following a trial the court found: "That defendant and cross-complainant has not properly cared for said children, in that, she has not properly clothed and fed them; that she has left them home alone at night and has cursed and sworn at them and in their presence; that she has openly associated and visited with other men in and about the Town of Dunsmuir and has associated with and permitted other men to visit her in her home in the Town of Dunsmuir during the last hours of the evening and early hours of the morning in the presence of the minor children of the parties hereto; that by reason of the aforesaid facts the Court finds that said defendant and cross-complainant is not a fit and proper person to have the care, custody and control of said minor children, or either, or any of them."

The interlocutory decree of divorce granted respondent a divorce, awarded the custody of the minor children to respondent, and provided further, "that during the time he, the said plaintiff and cross-defendant, shall have such care, custody and control of the said minor children, the said minor children, and each of them, shall be under the physical custody and control of Sarah Yates, the mother of said plaintiff and cross-defendant."

Appellant wife has appealed from the judgment, and while she contends that the evidence is insufficient to support the judgment, her attack is primarily upon the provision in the decree awarding the custody of the children to respondent husband with physical custody in the mother of respondent. Appellant contends that as a matter of law she is entitled to have the custody of the children awarded to her in preference to the paternal grandmother unless extraordinary evidence and conditions justifying such order are found to exist, and that she cannot be deprived of her rights to the custody in preference to the paternal grandmother unless it is shown that the health, safety, morals and welfare of the children will be permanently impaired by allowing them to remain in the custody of their natural mother.

There would be much merit in appellant's contention if there were no substantial evidence to support the trial court's finding that appellant was not a fit and proper person to have the custody of said children. For, as provided in subdivision 2 of section 138 of the Civil Code. "as between

parents adversely claiming the custody, neither parent is entitled to it as a matter of right; but other things being equal if the child is of tender years it should be given to the mother." ▓▓ And as was held in *Roche* v. *Roche*, 25 Cal.2d 141 [152 P.2d 999], and cases cited therein, the custody of minor children may not be awarded to a grandparent if either of the parents is a fit and proper person to have their custody. But the difficulty with the position of appellant is that in the instant case there is ample evidence to support the court's finding as to the unfitness of appellant.

Appellant has made a lengthy and able argument devoted primarily to an endeavor to point out wherein the testimony reflecting upon appellant should not be given the construction placed upon it by the trial court. However, after a careful study of the entire record we are unable to agree with appellant. ▓▓ The trial court determines issues of fact. It sees and hears the witnesses and is charged with the duty of weighing the evidence and resolving the conflicts in it. ▓▓ When the question of whether the findings of the trial court are sustained by the evidence comes before an appellate tribunal, all conflicts in the evidence are resolved in favor of the court's finding and all inferences which may reasonably be drawn from the evidence favorable to the court's finding may also be relied upon by respondent. And unless after considering the evidence and the inferences which may reasonably be drawn therefrom it still appears that the law precludes the prevailing party from recovering, the judgment must be affirmed.

▓▓ The record in the instant case shows that appellant, Jeannette L. Yates, and respondent, Jack Yates, were married in Dunsmuir, California, December 29, 1946. There were three minor children to the marriage. The record reveals that the couple had quarreled on several occasions on matters ranging from fiscal problems to child care, and that there had been at least two separations prior to the filing of the present action.

Respondent testified that every time appellant mother didn't "get her way" she would throw tantrums and that she constantly quarreled over money. He also testified that appellant left the vicinity of their home about 11 o'clock p. m. the evening of October 31, 1950, and didn't return until approximately 11 o'clock a. m. of the following day; that she did not notify him although there was a telephone available, and that her excuse was that she had wrecked

the automobile and that she would not do it any more. Respondent also testified that his wife was going out with Mexicans and that on one occasion when he accused her of infidelity she told him, ''You have to prove it and you have to have pictures,'' and on another occasion she told him she would rather have a Mexican than him. He also testified that three or four months before the trial he saw appellant kissing the man who boarded with her.

Albert Neasham, Dunsmuir police officer and neighbor, testified that he had seen male visitors at the Yates home during respondent's absence and that one left at about 6 o'clock in the morning; that appellant used profanity; that appellant had been going with Mr. Young, and he had seen Young coming out of the Yates home ''at least 4:00 o'clock in the morning.'' When Neasham informed her that it didn't look good for men to be leaving the house at nighttime, she replied in effect ''that it didn't.''

Police Officer August Bommelyn testified that on three occasions he saw appellant talking through the jail bars to Mexican nationals who were being detained. These incidents indicate a pattern corroborating respondent's testimony concerning her relationships with other men.

Mrs. Neasham testified that she saw appellant in a tight embrace with another man; that she saw a man on many occasions visit appellant from midmorning until midnight or 1 o'clock in the morning; that appellant told Mrs. Neasham about a male house of prostitution; and stated that she liked Mexicans because they were dark.

Clarence Yates, father of respondent, testified that he observed appellant late in the evening throwing stones at the window of an apartment occupied apparently by Manuel Lopez. Appellant denied throwing stones, but said that she was trying to contact Lopez in order to borrow his car so that she might go to see her attorneys.

Respondent and Mr. and Mrs. Neasham, and respondent's mother testified to the effect that appellant constantly used profane and abusive language in the presence of the children.

Kenneth Butters, who knew the parties for seven years, testified that he observed that the children were inadequately clothed, that they played outside without coats during the cold weather and at a time when they had colds. Mrs. Neasham testified that the children were without galoshes or hats in winter.

Respondent's mother testified that the children were underweight, ill-fed, ill-clothed, and sickly.

Albert Neasham testified that the children had been left alone at night and that he had observed appellant leave the home in the evening.

Barbara Neasham stated that on many occasions the children had come to her home because appellant had left them alone; that occasionally when appellant was home she locked them out; that once one of the children cut her wrist while appellant was away and it was necessary for Mrs. Neasham to render first aid.

Respondent's mother, Mrs. Sarah Yates, testified that she had visited appellant's home every two weeks; that the condition of the house was bad; that the sink was "green" and had to be disinfected; and that the house was dirty on more occasions than it was clean.

The senior probation officer, Lester E. Newton, testified that when he visited the premises the house was in apparent disarray, "disorderly—unkept—it wasn't a good house."

The deputy probation officer, Margaret Hoyt Berg, testified that the kitchen was extremely disorderly; that food was lying around, that the kitchen appliances looked dirty; that clothes were lying all around the living room and bedroom; that the kitchen floor was dirty as if it hadn't been swept or mopped for a long time. Also during the trial when no one was at home, Mrs. Berg looked through the window and the kitchen was again "Quite disorderly with open perishable foodstuffs and other foods lying 'helter skelter' around the kitchen."

Appellant denied any improper conduct on her part and endeavored to explain many of the incidents hereinbefore mentioned, and upon this appeal has argued most earnestly that the evidence did not justify the court in depriving her of the custody of these very young children. Appellant has cited many cases dealing with the right of a mother to the custody of her children in preference to a grandparent or a stranger. It would serve no useful purpose to review these cases as the legal principles therein enunciated are well settled.

■ This court said in *In re White*, 54 Cal.App.2d 637, at page 640 [129 P.2d 706]:

"The law presumes that the interest of a child will be best subserved by awarding its custody to a parent, unless such parent is unfit to have its care. . . .

■ "The right of a parent to the care and custody of a child cannot be taken away merely because the court may believe that some third person can give the child better care and greater protection. One of the natural rights incident to parenthood, a right supported by law and sound public policy, is the right to the care and custody of a minor child, and this right can only be forfeited by a parent upon proof that the parent is unfit to have such care and custody."

In that case this court held that the mother of a 6-year-old child was entitled to the custody of the child in preference to the paternal grandparents, but there was in that case no question as to the fitness of the mother. The foregoing language from *In re White* was approved in *Roche* v. *Roche*, *supra*.

Appellant's counsel, in a letter written to this court since the filing of the briefs and upon the oral argument, have stated that they rely also upon the recent case of *Ashwell* v. *Ashwell*, 135 Cal.App.2d 211 [286 P.2d 983], which they state "is a case on all fours with the case at bar." In that case this court reversed an order modifying an interlocutory decree of divorce changing the custody of four minor children ranging in age from 2 to 6 years from the mother to the father. This court held that an order modifying an interlocutory divorce decree by taking the custody of four young children from the mother and giving it to the father constituted an abuse of discretion where, a short time before the order appealed from was made, the court had adjudged the mother a fit and proper person to have custody of the children and had awarded them to her; where neighboring women testified that the mother cared for her children well and that they appeared to he healthy, happy and normal; where, notwithstanding her meretricious relations with another man resulting in the birth of a fifth child, there was no proof that she was a loose woman or amoral, but there was proof that she and her lover intended to marry as soon as the divorce decree became final; and where, in view of the father's express intention to remove the children to Virginia for rearing by their grandmother whom they had never seen, this would prevent them from having any further contact with their mother whom they had always known, and who was compelled by economic necessity to live with and accept the aid of her lover. This court held further that in determining where custody of children of divorced parents shall lie, the courts are not engaged in a disciplinary action to punish

parents for their shortcomings as individuals nor to reward the unoffending parent for any wrong suffered because of the sins of the other, but that in proceeding for modification of interlocutory decree of divorce so as to change custody of minor children from mother to father, the prime question was what was the effect of mother's custody upon lives of children and what would be the effect of a modified decree that would disturb their settled life and compel them to make adjustments to a life with strangers. The court pointed out that the evidence showed that the mother took good care of her children and that in view of the tender ages of the children the conduct of the mother had no detrimental effect upon them.

However, the facts in the instant case are far different from those in the Ashwell case, for here there is not only evidence of improper conduct on the part of appellant mother, but there is also evidence that she did not give proper care and attention to the children, due to some extent to her improper conduct. It is evident that the trial court was reluctant to deprive appellant mother of her children but felt compelled to do so by the evidence, for the court stated in its memorandum decision:

"The most difficult matter for the court in this case is the custody of the minor children of this marriage, who are of tender years. All under 6 years of age. The law states all other things being equal the custody of children of tender years should be awarded to the mother. The best interests and general welfare of the children however is at all times the paramount issue in these cases. If a mother by her associations, by her immoral conduct, by the home environment she creates around the children, by her neglect shows she is an unfit person to have their custody they should be removed from her custody."

In view of the foregoing we are satisfied that the record amply supports the court's findings that the respondent was entitled to a divorce and also supports the order of the court as to the custody of the minor children.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied February 20, 1956, and appellant's petition for a hearing by the Supreme Court was denied March 21, 1956.