[No. B021741. Second Dist., Div. Four. Dec. 16, 1987.]

In re JANETTE H., a Minor.
BEATRICE H., Petitioner and Appellant, v.
JOAN H., Objector and Respondent.

**COUNSEL**

Arthur H. Lampel for Petitioner and Appellant.

No appearance for Objector and Respondent.

## OPINION

**GEORGE, J.**—Appellant Beatrice H. appeals from a California superior court order registering an order made by a district court in the State of Virginia, which awarded her custody of her minor child, Janette H., subject to certain conditions including a right of visitation in favor of respondent Joan H., the companion of appellant's former husband, John H. ■■ ■■ Appellant also appeals from an order denying her request to modify the out-of-state order to terminate these conditions.[1]

On appeal, appellant contends that the lower court erred in registering the Virginia court order, asserting that: (a) respondent was equitably and statutorily (Civ. Code, § 5157; Pen. Code, §§ 277, 278, 278.5) barred from registering the order due to her participation in an alleged kidnapping of the minor child; (b) the State of Virginia had no jurisdiction under the UCCJA (Uniform Child Custody Jurisdiction Act) (Cal. Civ. Code, §§ 5150 to 5174; Virginia Code 1950, §§ 20-125 to 20-146); (c) respondent did not meet her burden of proof entitling her to visitation rights; and (d) the lower court could not partially enforce the Virginia court order after striking the portion thereof which it had found to violate the UCCJA. Appellant also contends that the lower court erred in refusing her request to modify the registered order. As discussed below, we hold that the lower court properly registered and refused to modify the Virginia court order.

### FACTS

In 1982 appellant's then husband, John, initiated marital dissolution proceedings in Los Angeles.[2] John received temporary custody of his and appellant's young daughter, Janette, as well as of two other daughters. At about that time, John, his companion Joan (who assumed John's surname), and Janette moved from California to Virginia. Appellant thereafter did not see Janette for several years. During this period, and apparently prior to January 1985, John died. Janette continued to live with respondent in Virginia until appellant finally located them in that state. Appellant unsuccessfully attempted to reclaim Janette under the custody provisions of a default judgment which had been entered January 11, 1985, in the California dissolution action, whereupon respondent applied to the Virginia court for custody of the child.

---

[1] One of the orders appealed from is a minute order which ordinarily is not appealable. (See *Billings* v. *California Coastal Com.* (1980) 103 Cal.App.3d 729, 733, fn. 1 [163 Cal.Rptr. 288]; *Brown* v. *Municipal Court* (1978) 86 Cal.App.3d 357, 360, fn. 1 [150 Cal.Rptr. 216].) However, we treat it as the final order which the trial court intended to make.

[2] We take judicial notice of the superior court file in this case pursuant to Evidence Code section 459, subdivision (a).

On July 9, 1985, the Virginia court awarded custody of Janette to appellant, subject to certain conditions: that appellant remain under the continued supervision of the Department of Social Services (DPSS)[3] or other appropriate agency for a period of three years in the jurisdiction in which appellant chose to reside with Janette, that that agency prepare a report on Janette's progress for the benefit of the Virginia court every six months, that appellant and Janette receive therapy for a period of two years, and that respondent receive thirty days of visitation with Janette each year.

By the terms of the Virginia court order, appellant was also required to register the order in Los Angeles County pursuant to the UCCJA within 20 days after appellant's return to California. The order reflected appellant's consent to (1) the Virginia court's determination that the previous custody order made in California was null and void due to the death of John prior to entry of that order, and (2) appellant's extradition to Virginia should she violate the terms of the custody decree.

In March 1986, respondent applied in the court below for an order to show cause for enforcement of the Virginia custody decree, by registering it in this state pursuant to California Civil Code section 5164,[4] alleging that appellant had failed to comply with the terms of the Virginia court order. Respondent attached her Virginia attorney's declaration that no reports had been filed with the Virginia court pursuant to the order. Respondent also attached lengthy declarations made by an older daughter of appellant, Nancy, describing her mother's troubled psychiatric past, which included acts of violence such as stabbing another daughter in the chest with a knife, numerous confinements in mental institutions, and many attempts by members of her family to avoid her.

In opposition, appellant requested that respondent's visitation rights and the other conditions attached to appellant's custody be terminated. In her opposition appellant declared that she had contacted DPSS (actually the Department of Children's Services) pursuant to the Virginia court order and had been informed that this agency would not provide the reports required by the order. She had also arranged for therapy for herself and Janette.

The court below accepted the registration of the Virginia court order with the exception of paragraph 1, which required that an appropriate child services agency monitor appellant's custody and make periodic reports to

---

[3] The correct title of the California agency then and now is the Department of Children's Services.

[4] Hereinafter, unless otherwise indicated, all statutory references are to the California Civil Code.

the Virginia court, the court below finding that "The Virginia court has no jurisdiction over California's Child Services."

Subsequently, by requesting modification of the order for custody, appellant renewed her attempt to terminate the visitation rights granted respondent as well as the other restrictions on appellant's custody. Appellant attached the statement of a licensed clinical social worker who had conducted therapy sessions for Janette and appellant. The social worker had concluded that Janette was not interested in visiting with respondent and had suffered a decline in her overall school performance after contact with respondent and, finally, that it was not in Janette's best interest to continue visitations with respondent. After a hearing, the trial court denied appellant's request for modification of the Virginia court order. Appellant has appealed from that order and from the order accepting registration of the Virginia court order.

Due to the lapse of time between entry of the original Virginia court order in 1985 and the perfecting of this appeal, together with the lower court's severance of the requirement of agency supervision, several conditions of that order have already been extinguished. Thus it is only respondent's right to visitation which is still the subject of this dispute.

## DISCUSSION

In the present appeal, respondent has failed to file a brief. (See Cal. Rules of Court, rule 17b.) This court is under no duty to seek out points of law in support of the judgment (*American Motorists Ins. Co.* v. *Carver* (1969) 275 Cal.App.2d 793, 794 [80 Cal.Rptr. 332]); however, appellant still has the affirmative burden of establishing error, and respondent's failure to contest the appeal does not require an automatic reversal. (*In re Marriage of Davies* (1983) 143 Cal.App.3d 851, 854 [192 Cal.Rptr. 212]; *Richardson* v. *Rose* (1961) 197 Cal.App.2d 318, 319 [17 Cal.Rptr. 84].)

### Registration of the Out-of-State Custody Order

The UCCJA "was promulgated for the stated purposes of avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, discouraging continuing conflict over custody, deterring abductions and unilateral removals of children, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of sister states. [Citation.]" (*Kumar* v. *Superior Court* (1982) 32 Cal.3d 689, 695 [186 Cal.Rptr. 772, 652 P.2d 1003], fn. omitted; § 5150.) Under the act (Civ. Code, § 5151 and Va. Code, § 20-125), "Contestant"

refers to "a person, including a parent, who claims a right to custody or *visitation rights* with respect to a child" (subd. (1), italics added). "Custody determination" refers to court orders providing for the custody of a child, *"including visitation rights"* (subd. (2), italics added). ■ Thus respondent as a nonparent clearly had standing to seek enforcement of her *visitation* rights under the terms of the UCCJA.

■ The lower court's finding regarding Virginia's jurisdiction, for purposes of enforcing the out-of-state order in a California court, is subject to a substantial evidence standard of review. (*In re Marriage of Fox* (1986) 180 Cal.App.3d 862, 869 [225 Cal.Rptr. 823].)

Respondent sought to register the Virginia court order (§ 5164) as well as enforce its visitation provision and other conditions (§ 5162). The latter section provides that "[t]he courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this title . . . ." ■ "This section was intended to subject out-of-state decrees to U.C.C.J.A. subject-matter jurisdiction requirements. [Citation.]" (*In re Marriage of Fox, supra,* 180 Cal.App.3d 862, 871.) Under this section, the lower court must first determine whether the foreign court order was made "substantially in accordance" with the standards of the UCCJA before it can be registered under section 5164. (*In re Marriage of Hopson* (1980) 110 Cal.App.3d 884, 893 [168 Cal.Rptr. 345]; *In re Marriage of Malak* (1986) 182 Cal.App.3d 1018, 1025 [227 Cal.Rptr. 841].)

The jurisdictional grounds for making a child custody determination are described in section 5152 of the UCCJA. The corresponding section of the Virginia version of the UCCJA is section 20-126. (*Middleton* v. *Middleton* (1984) 227 Va. 82 [314 S.E.2d 362, 369].)[5] Section 5152 describes the conditions which must be met for a court to be competent to decide a child custody matter, while later sections "articulate the circumstances or situations in which the courts may or should decline to *exercise* jurisdiction." (*Kumar* v. *Superior Court, supra,* 32 Cal.3d 689, 695, italics in original.) The distinction is important because appellant speaks of Virginia as *lacking* jurisdiction to act in the present matter, whereas the question is whether the UCCJA *directs or allows exercise* of jurisdiction. (*Ibid.*) Both California and Virginia can claim to have jurisdiction from among the "multifaceted components of section 5152." (*Ibid.*)

The test for subject-matter jurisdiction, as defined in section 5152, subdivision (1)(a), requires that the forum state be the child's home state at the

---

[5] For convenience, we refer to the California version of the pertinent UCCJA sections rather than to the Virginia-enacted counterpart of these provisions.

time the proceeding commences or within six months of the commencement of the proceedings. Section 5151, subdivision (5) defines "home state" as a state where the child has lived with his parents, a parent, or a person acting as parent, for at least six consecutive months immediately preceding the time involved. (Va. Code, § 20-125(5); *Middleton* v. *Middleton, supra,* 314 S.E.2d 362, 368.)

It appears from the record that at the time the Virginia court order was made, Janette had been living in Virginia for a period over six months—with John prior to his death and with respondent. Thus it is clear that at the time the Virginia proceedings commenced in 1985, that forum had subject-matter jurisdiction. It is also clear from the record that at the time the original dissolution and custody proceedings were initiated in 1982, California had subject-matter jurisdiction under section 5152, subdivision (1)(a), because at that time Janette and at least one parent had resided in California for a period over six months prior to the commencement of that proceeding.

■ Although appellant appears concerned chiefly with the Virginia court's failure to decline to exercise jurisdiction under the Virginia statutory counterpart to section 5157 dealing with the wrongful taking of a child from another state, that section by its terms gives the court *discretionary* power to decline jurisdiction and has been limited, at least in California, to situations where a child has been removed from a state in violation of an existing custody order or injunction. (*In re Marriage of Fox, supra,* 180 Cal.App.3d 862, 874.) In the present action, at the time John left California with Janette his action did not violate any existing custody order or injunction. Nor is there any evidence in the record indicating that any kidnapping of Janette took place, as alleged by appellant and unequivocally denied by respondent in the court below.

The more important consideration is whether the Virginia court's assumption of jurisdiction violated any *mandatory* provisions of the UCCJA. This issue is presented by the fact that dissolution proceedings underway in California had resulted in a default judgment awarding appellant custody of Janette prior to respondent's attempt to assume custody in Virginia.

Under section 5155, subdivision (1), "[a] court of this state shall not exercise its jurisdiction under this title if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this title, unless the proceeding is stayed by the court of the other state . . . ."

Subdivision (3) provides that "[i]f the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged . . . ."

To avoid the possibility of conflicting initial custody decrees in two states, the UCCJA "uses a combination of three basic devices: (1) the parties are obligated to inform their respective courts of pending proceedings in another jurisdiction (§ 5158 . . . ); (2) a court, upon being informed of an action pending in another state, is required to communicate and consult with the other state court to the end that the case may be litigated in the most appropriate forum (§ 5155, subd. (3) . . . ); and ultimately (3) if the conflict is not resolved by communication and consultation between the courts, the priority-of-filing rule applies (§ 5155, subd. (1) . . . )." (*Guardianship of Donaldson* (1986) 178 Cal.App.3d 477, 491 [223 Cal.Rptr. 707].) "[A]n ultimate conflict between two opposing custody decrees is averted by the priority-of-filing rule of the Act. The second court must yield jurisdiction to the court in which a custody action was pending first. (7) An action is "pending" under this rule when it is commenced, that is, when it is filed not when process is served.' [Citations.]" (*Id.,* at p. 491, fn. 11.)

In the present action it is clear the Virginia court was aware of the action pending in Los Angeles Superior Court because it expressly ruled that our lower court's previous ruling, concerning dissolution of the marriage and granting custody of Janette, was null and void due to John's death prior to the entry of that order. The order of the Virginia court indicated further that the latter court had obtained appellant's consent to its ruling.

In *In re Guardianship of Donaldson, supra,* 178 Cal.App.3d 477, the trial court found that an order awarding the father temporary custody of his two children pursuant to a marital dissolution order terminated upon his death. " 'Divorce is a personal action that does not survive the death of a party.' [Citation.] . . . '[T]he death of a party to a dissolution proceeding abates the cause of action, as the status of the parties is no longer before the court, and . . . the court thus loses jurisdiction to make any *further determination* of . . . rights . . . .' (Italics in original.)" (*Id.,* at pp. 485-486.) The court found that upon the death of the father, the mother became entitled immediately to sole custody of the children pursuant to section 197. (*Ibid.*)

Thus while John's death prior to entry of the California order immediately entitled appellant to custody, it also extinguished the dissolution proceeding *pending* in California. Therefore, at the time the petition for custody was filed in Virginia, there was no action pending elsewhere and the Virginia court was not required to communicate with any court or refrain from exercising its own jurisdiction.

Appellant has thus not met her burden of affirmatively demonstrating error on the part of the trial court in registering and enforcing the order pursuant to the provisions of the UCCJA.

*Request for Modification of Out-of-State Decree*

■ Appellant also contends that her request to modify the custody order to terminate respondent's visitation rights was improperly denied.

The trial court concluded it did not have jurisdiction to modify the out-of-state custody order under section 5163. That section (subd. (1)) provides that "[i]f a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction."

This section was recently interpreted in *Kumar* v. *Superior Court, supra,* 32 Cal.3d 689. In that case, the husband and the wife were divorced in New York, the wife receiving custody of their child and the husband receiving visitation rights. Several years later, the wife moved with the child to California. The husband had the New York custody court order registered in California in order to enforce his visitation rights. The wife sought an order to show cause in California to modify the visitation rights and other provisions of the New York order. (*Id.,* at pp. 691-692.)

The California Supreme Court concluded in *Kumar* that under section 5163, New York had continuing jurisdiction to modify its custody order and California had no authority to modify that order unless New York declined jurisdiction. (*Id.,* at p. 694.) " 'In other words, the continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's

continuing jurisdiction. . . . Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.'* [Citation.]" (*Id.,* at p. 696, italics in original.)

In *Kumar,* it was held that all petitions for modification must therefore be addressed to the state which rendered the original decree if that state had jurisdiction, and retained it, under the standards of the act. (*Kumar* v. *Superior Court, supra,* 32 Cal.3d 689, 698.) "Under section 5163, the strong presumption is that the decree state will continue to have modification jurisdiction until it loses all or almost all connection with the child." (*Id.,* at p. 699.) This preference for determination of a custody dispute in the state issuing the initial decree is also expressed in the Federal Parental Kidnapping Prevention Act of 1980 (28 U.S.C. § 1738A). (*In re Marriage of Pedowitz* (1986) 179 Cal.App.3d 992, 999-1000 [225 Cal.Rptr. 186].) In *Kumar* the California Supreme Court, concluding it was necessary to determine whether the New York court had declined to exercise its continuing jurisdiction under section 5163, found that the New York ruling unequivocally expressed the continuing jurisdiction of the New York courts over the matter of custody. (*Kumar* v. *Superior Court, supra,* 32 Cal.3d 689, 700.)

In essence the Virginia court in the present case also asserted its continuing jurisdiction by conditioning its award of custody upon appellant's consent to extradition to Virginia should she violate the terms of the order, and by requiring continued agency supervision, although this provision was found to be unenforceable. The action of the court below in striking the latter provision did not defeat Virginia's unequivocal assertion of its continuing jurisdiction. We therefore conclude under the authority of *Kumar* v. *Superior Court, supra,* 32 Cal.3d 689, that the lower court properly concluded it had no power to modify the out-of-state order granting respondent visitation rights.

The trial court did not err in registering and ordering the enforcement of the Virginia court order or in refusing to modify that order.[6]

---

[6] We deny appellant's request to remand this matter to the superior court "for determination of attorney's fees and costs to be paid by Respondent," appellant having failed to cite any authority or basis in the record for such a determination. (See § 5157; 1 Witkin, Cal. Proce-

## Disposition

The orders are affirmed.

Woods, P. J., and Rothman, J.,* concurred.

dure (3d ed. 1985) Attorneys, § 162, pp. 188-190; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, pp. 469-470.)

*Assigned by the Chairperson of the Judicial Council.