[No. B032441. Second Dist., Div. One. Dec 21, 1988.]

In re AISHA B., a Person Coming Under the Juvenile Court Law.
KAREN S., Plaintiff and Appellant, v.
LOS ANGELES COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Defendant and Respondent.

COUNSEL

Peter C. Carton for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, Sterling Honea and Joe Ben Hudgens, Deputy County Counsel, for Defendant and Respondent.

Susan LeFevre, Deputy County Counsel, for Minor.

OPINION

HANSON (Thaxton), J.—

### INTRODUCTION

In a petition filed November 3, 1987, the Los Angeles County Department of Public Social Services (D.P.S.S.) requested that Aisha B., a minor taken into custody by the Department of Children's Services on October 30, 1987, be adjudged and declared a dependent child of the juvenile court. The petition alleged that the minor had no parent or guardian capable of and actually exercising proper and effective parental care and control; that the minor normally resided with her mother, who had demonstrated numerous recurrent mental health and emotional problems, making her unable to care for and supervise the minor; and that the minor's father's ability to care for her was unknown.

On November 24, 1987, a detention hearing set the matter for jurisdictional adjudication on January 25, 1988. At that hearing, the court released

the minor to the custody of her father, ordered Los Angeles County to pay for the minor's one-way transportation to Pennsylvania, and dismissed the November 3, 1987, petition. Karen S., mother of the minor, filed a notice of appeal on January 26, 1988.

## FACTS

At the January 25, 1988, hearing, Karen S., the minor's mother, was represented by an attorney, Leo Lacy. Vincent B., the minor's father, was represented by an attorney, Joseph MacKenzie. The minor was represented by Susan LeFevre, a deputy of the Los Angeles County Counsel. Chris Dobbs, a D.P.S.S. social worker, and Marcy Lawrence, a D.P.S.S. court officer, also attended.

MacKenzie stated that Vincent B. had contacted counsel in Pennsylvania, with whom MacKenzie had spoken. Father's attorney had received from the Pennsylvania court of common pleas an ex parte order declaring the temporary emergency custody of Aisha B. be awarded to him, in an order dated January 13, 1988. MacKenzie provided a certified copy of that executed order for the court record.

LeFevre stated that the county requested the court not to dismiss the petition but to put it over until the Pennsylvania family law court issued a final order. The county would dismiss the petition when the father was awarded legal custody of the minor. LeFevre stated that the minor desired to live with her father. The trial judge spoke with Aisha alone in chambers, and from their conversation determined that she was "a very bright, opinionated, tough, little kid. I think she knows her own mind. The minor will be released to her father. And I see absolutely no point in proceeding on the petition. I'm just going to order that the petition be dismissed."

The trial court ordered the county to pay for the minor's transportation to Pennsylvania, and dismissed the petition. The mother's counsel objected to the decision because of the lack of notice concerning the ex parte proceeding and because she had devoted her life to rearing the child. The minor's mother stated her desire to appeal the order.

## ISSUES

The mother on appeal claims that: 1. A dismissal treating her worse than if the dependency petition had been sustained offends due process; 2. whether or not Pennsylvania has issued a permanent decree in favor of the father, the proceeding violated the Uniform Child Custody Jurisdiction Act; 3. county counsel's dual representation of the department and of the minor

was improper; and 4. the mother was denied the effective assistance of counsel. The county on appeal claims that the case is moot.

DISCUSSION

As both parties concede, and we assume, Vincent B. is the biological father of Aisha B. This issue, not in dispute, thus required no finding by the trial court. (*In re Lisa R.* (1975) 13 Cal.3d 636 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017].) The January 25, 1988, hearing was for jurisdiction or adjudication. Civil Code section 5152 sets forth the jurisdictional grounds for making a child custody determination. Civil Code section 5155, however, states in subdivision (1) that: "A court of this state shall not exercise its jurisdiction under this title if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this title . . . ."

Where two states have a claim to jurisdiction, the Uniform Child Custody Jurisdiction Act provides a way to alleviate jurisdictional competition and conflict. (*Kumar* v. *Superior Court* (1982) 32 Cal.3d 689, 695 [186 Cal.Rptr. 772, 652 P.2d 1003].) The Uniform Act, incorporated into the California Civil Code as title 9 in 1973, was adopted by Pennsylvania effective 1977. (*Wolf* v. *Weymers* (1981) 285 Pa.Super. 361 [427 A.2d 678]; 42 Pa. Cons. Stat. Ann., §§ 5341-5366.) It has been adopted by all 50 states and the District of Columbia. (12B West's Ann. Cal. Civil Code (1988 cum. pocket pt.) tit. 9, pp. 31-32.)

■ A California court has no concurrent jurisdiction with another state's court concerning custody. (*Kumar* v. *Superior Court, supra,* 32 Cal.3d 689, 699.) *Kumar* states that the Civil Code section 5152 guidelines govern the determination of *initial* jurisdiction. In the case at bench, however, as required by Civil Code section 5158, the father presented the trial court with an ex parte order from a Pennsylvania court giving him temporary custody. Thus the California court had to choose between jurisdiction in California or Pennsylvania according to Civil Code section 5155, subdivision (3). That choice was mandatory, not discretionary. (*Guardianship of Donaldson* (1986) 178 Cal.App.3d 477, 490-491 [223 Cal.Rptr. 707]; see also *Souza* v. *Superior Court* (1987) 193 Cal.App.3d 1304, 1310 [238 Cal.Rptr. 892].)

The choice must furthermore follow procedures set forth in Civil Code section 5155, subdivision (3), pursuant to the Uniform Child Custody Jurisdiction Act goal of limiting jurisdiction rather than encouraging or condoning its proliferation. (*In re Marriage of Hopson* (1980) 110 Cal.App.3d 884, 899-900 [168 Cal.Rptr. 345]; *In re Janette H.* (1987) 196 Cal.App.3d 1421,

1429 [242 Cal.Rptr. 567].) That section requires the court, upon being informed of an action in another state, to communicate and consult with the other state to the end that the case may be litigated in the most appropriate forum. (*Guardianship of Donaldson, supra,* 178 Cal.App.3d 477, 491.)

We therefore remand for the trial court's determination whether to exercise jurisdiction. We express no opinion on the outcome of the trial court's determination, except to state that the statutory procedures must be followed so that sufficient information is placed before the trial court to enable it to determine jurisdiction after consulting with the Pennsylvania court. The record in the case at bench reflects that the court did not follow those procedures and thus did not have adequate information to make "the best custody decision." (178 Cal.App.3d at p. 493.) In jurisdictional terms, those procedures promote " 'cooperation with courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.' " (*In re Fathom K.* (1985) 173 Cal.App.3d 773, 777 [219 Cal.Rptr. 294], quoting Civ. Code, § 5150, subd. (1)(b).)

Given this result of our review of the trial court's jurisdictional determination, we do not reach the remaining issues raised by the parties to the appeal.

### DISPOSITION

We remand the case to the trial court for its determination of jurisdiction.

Spencer, P. J., and Ortega, J., concurred.