[Civ. No. 30087. Fourth Dist., Div. Three. June 13, 1983.]

In re the Marriage of MARIE T. and MORRIS A. DAVIES.
MARIE T. DAVIES, Appellant, v.
MORRIS A. DAVIES, Respondent.

**COUNSEL**

Michael D. Maddy for Appellant.

No appearance for Respondent.

**OPINION**

**TROTTER, P. J.**—Marie T. Davies (Wife) appeals from that portion of the interlocutory judgment of dissolution of marriage dealing with the bifurcated issues of spousal support and valuation and division of community assets which states as follows: "The court shall not retain jurisdiction over the issue of capital gains [tax] liability for the sale of the [family] residence."

■ Morris A. Davies (Husband) has not filed a respondent's brief in this matter and thus rule 17(b) of the California Rules of Court is applicable to this appeal. It provides in pertinent part: ". . . the court may accept as true the statement of facts in the appellant's opening brief and, unless the appellant requests oral argument, may submit the case for decision on the record and on the appellant's opening brief." Courts, however, have differed in the application of this rule. One line of cases hold that respondent's failure to file a brief may be construed as a consent to a reversal (*Doran* v. *White* (1961) 196 Cal.App.2d 676, 677 [16 Cal.Rptr. 841]); it has also been held to be an abandonment of the trial court decision. (*Roth* v. *Keene* (1967) 256 Cal.App.2d 725, 727 [64 Cal.Rptr. 399]; *Freitas* v. *City of Atwater* (1961) 196 Cal.App.2d 289, 296 [16 Cal.Rptr. 397].) Another view is that since the appellant has the affirmative burden to show error whether or not the respondent's brief has been filed, the respondent's failure to file does not require an automatic reversal. (*Perfection Paint Products* v. *Johnson* (1958) 164 Cal.App.2d 739, 740 [330 P.2d 829]; *Kriegler* v. *Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224, 229 [74 Cal.Rptr. 749].) We think the better rule is to examine the record and reverse only if prejudicial error is found. Adhering to that standard, we have reviewed the record and affirm the judgment as modified herein.

### FACTS

The parties were married from August 10, 1974, until March 17, 1981, when they separated. There are no children from the marriage. On September 28, 1981, the court granted Wife's petition for an interlocutory judgment of dissolution of marriage. The issues of spousal support and the valuation and division of community assets were heard separately on November 20. The court rendered its further judgment on the bifurcated issues on February 18, 1982.

The principal asset owned by the parties at the time of separation was the family home; other assets included household furnishings, the two family cars and Wife's credit union account. The judgment awarded Wife personal property worth $5,720 and Husband personal property worth $765. The court found the family residence to be community property, ordered it sold, and the sale proceeds equally divided. Wife was ordered to use her share of the sale proceeds to pay Husband $2,615 to equalize the division of community property.

The trial court found Husband had purchased a second residence and Wife desired to do the same but was unsure about her financial ability to do so. The court declined to retain jurisdiction over the issue of capital gains taxes arising from the sale of the house, and it did not expressly allocate any ensuing tax liability between the parties. Wife appeals from that portion of the judgment on the bifurcated issues wherein the court refused to retain jurisdiction over the capital gains tax issue.

## DISCUSSION

Wife contends the trial court's judgment completely ignores the tax consequences resulting from the sale of the family home and that absent equal allocation of these tax burdens "equal division" of the community property assets will not be achieved in accordance with section 4800, subdivision (a), of the Civil Code. She alleges that federal and state tax laws treat residential property as a capital asset, the sale of which generally results in the realization of taxable gain or profit. (Int.Rev. Code, §§ 1001, 1221; Rev. & Tax. Code, §§ 18031, 18161.) Tax laws also provide that such capital gains taxes may be postponed or deferred whenever the selling taxpayer purchases a new residence for a price equal to or exceeding that of the old home, so long as the replacement residence is purchased within two years before or after the sale of the old residence. (Int.Rev. Code, § 1034(a); Rev. & Tax. Code, § 18091.)

Wife argues Husband's purchase of a replacement home has virtually assured him a deferral of capital gains taxes on his share of the proceeds, while she may not be financially able to purchase a second home within the required two-year statutory period and defer her taxes. Therefore she contends the court should retain jurisdiction for two years after the sale of the family residence to ensure that the tax liability actually incurred is equally divided between the parties.

Wife asserts that the court committed error: (1) by failing to expressly order an equal division of the taxes arising from the sale of the family home; and (2) by declining to retain jurisdiction over the capital gains tax liability issue.

Wife relies heavily on the case of *In re Marriage of Epstein* (1979) 24 Cal.3d 76 [154 Cal.Rptr. 413, 592 P.2d 1165]. In *Epstein* the trial court awarded the husband a greater share of the community personal assets, and ordered the proceeds from sale of the family home be " 'divided between the parties in a fashion which will equalize the division of the parties' community property.' " (*Id.* at p. 82.) The trial court's order did not, however, take into account the potential capital gains tax liability resulting from the sale of the home.

Wife appealed, claiming that since she would receive a larger share of the sale proceeds in order to "equalize" her smaller award of the community personal property assets, she would also incur the greater share of the sale's potential tax liability. As a result she would actually receive less than half of the outstanding community property. She argued the court's order should have also considered the tax consequences which would result from the sale of the family home.

The Supreme Court agreed with Wife's contentions concluding that, under the circumstances present in *Epstein,* the court's division of community proper-

ty should take into account the taxes incurred as a result of the court ordered sale. (*In re Marriage of Epstein, supra,* 24 Cal.3d 76, 81.) The court held sale of the family home constituted a nonspeculative[1] taxable event resulting from the order equalizing the division of the community property. The court construed the lower court's judgment to provide upon remand,[2] the balance of the sale proceeds be used to equalize the division of the community property after taking into account capital gains taxes incurred thereby. (*Id.,* at pp. 88-89.)

The court noted the federal and state tax laws allowing deferral of capital gains tax liability (Int.Rev. Code, § 1034; Rev. & Tax. Code, § 18091) injected an element of uncertainty in the computation of capital gains taxes stemming from the sale of a family residence. It pointed out, however, that the amount of tax liability may have already been fixed by events occurring prior to its remand. Even if this were not so, the court suggested in future cases similar to *Epstein,* trial courts could recognize tax liability flowing from the sale of a family home "by providing that the liability incurred, if any, is owed equally by both spouses." The court also noted (citing *In re Marriage of Clark, supra,* 80 Cal.App.3d 417, 424) that unusual cases may merit retention of jurisdiction when necessary. (*Id.,* at p. 88.)

We now turn to a discussion of the issues raised by Wife.

■ 1. Did the trial court err in failing to order an equal division of the tax burdens stemming from the sale of the family residence?

The distribution of community assets in this case is similar to that in *Epstein.* However, contrary to *Epstein,* the trial court did not order equal division of the capital gains tax liability. Judicial economy militates against a remand based solely upon the trial court's omission, especially when the omission can be cured through modification of the judgment. Accordingly, we order modified the lower court's bifurcated judgment to provide any tax burdens originating from the sale of the family residence to be equally shared by the parties. In

---

[1] In so holding the court analogized the tax consequences arising from the court ordered sale of the home in *Epstein* to those flowing from the court ordered issuance of a promissory note payable from separate assets by one spouse to the other in order to equalize the distribution of community assets, which is viewed under the tax laws as the "sale" of a separate property interest, triggering in turn capital gains tax liability. The latter situation has been held to give rise to "immediate and specific" tax liability which is worthy of judicial recognition in the distribution of community assets. (*In re Marriage of Clark* (1978) 80 Cal.App.3d 417, 422-423 [145 Cal.Rptr. 602]; *In re Marriage of Brigden* (1978) 80 Cal.App.3d 380, 395-396 [145 Cal.Rptr. 716]; contra, *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 749, fn. 5 [131 Cal.Rptr. 873, 552 P.2d 1169]; *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 566-567 [63 Cal.Rptr. 13, 432 P.2d 709].)

[2] *Epstein* was remanded for a factual determination concerning the separate issue of husband's right to reimbursement for postseparation expenditures of separate funds on community obligations.

cases where proceeds of the sale will be unequally distributed in order to equalize the uneven division of other community assets, each party is responsible for one-half of all the taxes incurred by virtue of the sale, regardless of each party's actual share in the sale proceeds, unless the trial court chooses to award to one party all of the tax liability actually incurred to further offset the division of other community assets.

2. Did the trial court err in declining to retain jurisdiction over the capital gains tax liability issue?

Wife's arguments for retention of jurisdiction are seriously flawed. The mere possibility of taxation does not constitute a tax consequence sufficiently "immediate and specific" to merit judicial recognition in achieving an equal division of community property. (See, e.g., *Weinberg* v. *Weinberg, supra,* 67 Cal.2d 557, 566-567; *In re Marriage of Fonstein, supra,* 17 Cal.3d 738, 749, fn. 5; *In re Marriage of Clark, supra,* 80 Cal.App.3d 417, 422-423.)

Each party's ability to defer payment of the capital gains taxes flowing from the sale of the family home was far from certain at the time the trial court ordered the sale proceeds be used to equalize the otherwise uneven distribution of the community personal assets. Wife was "not sure" she would be financially able to purchase a replacement home within the two-year statutory limit. Although Husband had already purchased a replacement home, it was not certain he would qualify for deferment of capital gains taxes, since the replacement home may have a purchase price which does not meet or exceed the selling price of the family residence. At the time the court issued its order, it was not even certain that the sale of the family home would result in a taxable gain or profit; it was also entirely possible that the house could be sold for less than its purchase price (or adjusted tax basis). Further, deferral of taxation is *not* a tax consequence but rather a *postponement* of a tax consequence—the sale's attendant capital gains tax liability.

It is well settled that the trial court shall consider tax consequences emanating from its order dividing the existing community assets provided a showing of "*immediate* and *specific*" tax liability is sufficiently made. (*In re Marriage of Clark, supra,* 80 Cal.App.3d 417, 422; italics original.) However, regardless of the certainty surrounding the prospective tax liability, the trial court is not required to consider the impact of such consequences unless they will arise "*in connection with* the division of the community property." (*In re Marriage of Fonstein, supra,* 17 Cal.3d 738, 749, fn. 5, italics added.)

It is evident that whether either party can benefit from tax provisions allowing *postponement of payment of capital gains taxes* stemming from the sale of residential property (Int.Rev. Code, § 1034(a); Rev. & Tax. Code, § 18091) is

solely dependent upon factors totally *unrelated* and *immaterial* to the achievement of an otherwise equal division of the community assets. Financial ability to acquire a replacement home within the statutory two-year limit may well depend on factors such as individual income, ability to borrow money, individual savings, the receipt of a gift or inheritance, etc.; none of which hinges upon the equal distribution of community assets at the time of dissolution.

Accordingly, we hold that mere possibility either party may qualify for deferral of payment of the tax liability he or she incurs by virtue of the court ordered sale of the family residence is not a tax consequence which should be recognized by the trial court in achieving an equal division of existent community property.

We note, however, by way of contrast, that an equal allocation of the *tax liability*, if any, attending the sale of the family home is *necessary* to the attainment of parity in the division of community assets since the proceeds will be used to equalize the overall distribution of the community property.

We reject Wife's contention that unless the trial court retains jurisdiction over the issue of capital gains taxes equal allocation of these tax burdens will not otherwise be accomplished. ■■ ■■■■ ■■ ■■ In so doing we stress that once the trial court's judgment is modified to provide for an equal allocation of the tax burdens, if any, resulting from the court ordered sale of the family home, there is no need for further retention of jurisdiction since the court's duty to accomplish an "equal division" of the parties' community property under section 4800, subdivision (a), of the Civil Code is fulfilled.[3]

We further emphasize that in cases such as the one under review trial courts should not retain jurisdiction. Such action should properly be reserved for the "unusual case" (*In re Marriage of Epstein, supra*, 24 Cal.3d 76, 88 [154 Cal.Rptr. 413, 592 P.2d 1165]), thus freeing the trial courts from unnecessary, protracted litigation while achieving finality in the resolution of issues. It will also minimize threats of pending tax liability after an otherwise equal distribution of community property has been accomplished.

---

[3]Civil Code section 4800, subdivision (a), provides in its pertinent part: ". . . the court shall, either in its interlocutory judgment of dissolution of the marriage, . . . or at a later time *if it expressly reserves jurisdiction to make such a property division,* divide the community property . . . of the parties equally." (Italics added.)

It must be noted that even in cases where postponement of capital gains taxes is absolutely certain at the time the court orders the sale of the family home (i.e., *both* the sale price of the old home and the price of the replacement home are known), postponement of payment of the taxes incurred by either party as to his or her share of the sale proceeds does not require retention of the court's jurisdiction since, as we held above, regardless of what each party's share of the proceeds turns out to be, each party is nevertheless responsible for one-half of the overall tax liability incurred. Thus in such cases the deferring party will still be liable for payment of the difference, if any, between one-half of the overall tax liability incurred from the sale, and the tax liability which that party will defer on his or her share of the sale proceeds.

The trial court's "Further Judgment on Bifurcated Issues" is ordered modified as indicated in this opinion, and as such is affirmed.

Wallin, J., and Sonenshine, J., concurred.