Filed 4/18/25  Butler v. Superior Court CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LESLIE JEAN BUTLER, | H051113 |
| Petitioner, | (Santa Clara County Super. Ct. No. 2011-5-FL-000975) |
| v. | |
| THE SUPERIOR COURT OF SANTA CLARA COUNTY, | |
| Respondent; | |
| IMANI DEAN BUTLER, | |
| Real Party in Interest. | |

In this marital dissolution action, appellant Leslie Butler appeals from the trial court's statement of decision after a bench trial in 2023 to address the division of proceeds and tax payments from the sale of the residence she and respondent Imani Butler purchased during their marriage.  The trial court found the sale proceeds are community property and must be equally divided (after accounting for a prior $10,000 sanctions order against Leslie[1]) and denied both parties' claims for reimbursement.  The

---

[1] As the parties share a last name, for clarity we refer to them by first name.

court noted but made no findings on Leslie's claims regarding the payment of taxes related to the sale of the residence and the distribution of retirement pension accounts.

On appeal, Leslie challenges the trial court's rulings on the equal division of proceeds from the sale of the residence and contends that the court erred in failing to resolve the capital gains tax and retirement account disputes. She asserts that despite the outstanding retirement account and tax issues, the trial court's decision regarding the disposition of proceeds from the sale is final and may be treated as an appealable order.

For the reasons explained below, we conclude that Leslie has appealed from a nonappealable order and exercise our discretion to treat the appeal as a petition for a writ of mandate. We decide the trial court did not err in its characterization of the home as community property or in its order dividing the proceeds of the sale. Nevertheless, we agree with Leslie that the court erred to the extent it failed to address the parties' respective tax liability resulting from the court-ordered sale. We direct the issuance of a peremptory writ of mandate upholding the court's conclusion as to the division of the proceeds of the sale of the community property residence but vacating the statement of decision insofar as it declined to address the issue of capital gains tax liability. We direct the respondent court to enter a new statement of decision specifying an equal allocation of tax liability.

## I.  FACTS AND PROCEDURAL BACKGROUND

This is the second appeal in this case. The prior appeal concerned the disposition of the parties' community property residence based on a stipulation and order signed in May 2012. A panel of this court affirmed the trial court's order finding that Leslie had failed to comply with the stipulation requiring the residence to be deeded back to the

2

community and sold.  (*In re Marriage of Butler* (May 9, 2022, H049004) [nonpub. opn.] (*Butler*).)[2]

*A. Procedural History*[3]

When Imani and Leslie separated in December 2011, they owed $468,000 on the mortgage on their home, which they had purchased in 1998 and refinanced in 2005 and 2007.  They also owed $76,000 on a $100,000 home equity line of credit secured by the residence.  At the time of separation, the combined balance of the home mortgage and line of credit exceeded the value of the home by approximately $132,000.

Leslie, who lived in the residence after Imani moved out, sought a court order requiring Imani to assist with the mortgage payments or sign a quit claim deed and loan modification documents.  On May 15, 2012, the parties entered into a stipulation and order, drafted by Imani's attorney, which was signed by the judge and entered as a court order (May 2012 stipulation).  The May 2012 stipulation stated terms by which Imani was to quitclaim his interest in the residence, located on El Verano Way in Gilroy, which would be assigned to Leslie "as her sole and separate property," provided that she removed Imani from the mortgage "within twelve months by modifying the loan to remove his name or refinancing in her name alone."  It further provided that the residence would be deeded back to the community and sold in the event Leslie could not obtain the modification or refinancing.

Imani and Leslie entered into a status-only judgment of dissolution of the marriage as of August 16, 2012, reserving jurisdiction "over all other issues."  Leslie did not remove Imani's name from the loan, refinance the loan in her name only, or deed the

---

[2] In an order filed on April 29, 2024, this court granted the request to incorporate by reference the record from the prior appeal (No. H049004) into the record in this appeal (No. H051113).

[3] We assume familiarity with the facts and background set out in our prior opinion and recount only the procedural history and additional developments relevant to the questions before us.

3

home back to the community. Imani sought and obtained orders from the trial court in 2016 and 2019 to enforce the 2012 stipulation. Leslie failed to comply with those orders. The trial court conducted a court trial in November and December 2020 to address other issues related to the 2012 stipulation and orders, including Leslie's claims based on laches and breach of fiduciary duty and Imani's request for $10,000 in sanctions pursuant to Family Code section 271 for Leslie's willful failure to comply with the 2012 and 2016 orders.

In its February 2021 findings and order after hearing and written statement of decision (2021 order), the trial court granted Imani's request to impose $10,000 in sanctions, appointed the clerk of the superior court elisor to sign any deeds necessary to transfer the residence back to the community, directed the listing of the residence for sale for no less than $800,000, denied Leslie's breach of fiduciary duty claims, and "reserve[d] determination" of the parties' Family Code section 2640 claims, *Moore*/*Marsden*[4] claims, and claims related to the division of retirement accounts. The trial court denied Leslie's motion for new trial. Leslie appealed to this court from the 2021 order and filed in this court a petition for writ of supersedeas seeking to stay enforcement of the findings and order.

In August 2021, a panel of this court denied the petition for writ of supersedeas. In May 2022, this court affirmed the trial court's findings and order in the direct appeal. (*Butler*, *supra*, H049004.) This court rejected Leslie's arguments that she had complied with the 2012 stipulation and the trial court had misinterpreted the agreement. It upheld the trial court's characterization of the residence as community property after Leslie

---

[4] *In re Marriage of Moore* (1980) 28 Cal.3d 366; *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426. The " '*Moore/Marsden* rule' " (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1421) refers to the well-established principle that "[w]hen community property is used to reduce the principal balance of a mortgage on one spouse's separate property, the community acquires a pro tanto interest in the property." (*Id.* at pp. 1421–1422.)

4

failed to satisfy the conditions of the agreement. It further rejected Leslie's claim that the trial court erred in denying her laches defense and in characterizing the residence as community property based on the stipulation terms. It declined to address Leslie's arguments regarding reimbursement of the proceeds of the sale because "those issues were reserved for future determination." (*Butler*, *supra*, H049004.) This court also affirmed the imposition of $10,000 in sanctions. (*Ibid.*)

*B. 2023 Bench Trial*[5]

The parties returned to the trial court for a bench trial in February 2023 on the remaining and reserved issues, including the division of the proceeds from the sale of the residence. The same bench officer who issued the 2021 order presided over a two-day trial on the remaining issues.

Both parties presented their testimony by offer of proof, subject to cross-examination by counsel for the other side, and offered third-party testimony. Shirley Lampkin, broker for the selling party, testified on behalf of Imani. Kathy Dotson testified on behalf of Leslie regarding Leslie's average monthly expenditures on the property and its fair rental value. The trial court sustained objections to Leslie's testimony and offer of proof on the issue of laches. Both parties requested a statement of decision and findings and conclusions of law. At the end of the second day, the trial court stated its findings on the record and directed Imani's counsel to prepare a proposed statement of decision.

---

[5] Appellant's notice designating the record on appeal indicates that the February 2023 court trial was unreported. On July 5, 2023, appellant filed her proposed settled statement with the clerk of the trial court. The record does not reflect any modifications to the proposed settled statement by respondent or corrections by the trial court, which certified the proposed settlement statement for filing. (See Cal. Rules of Court, rule 8.137(h).)

In March 2023, the trial court considered the proposed statement of decision filed by Imani and a counterproposal filed by Leslie, to which no objections were filed, and served both sides with a proposed statement of decision.

*C. The Trial Court's Ruling*

On April 13, 2023, the trial court issued a final statement of decision "to address outstanding issues" following the November and December 2020 court trial "as well as to determine the division of the proceeds from the sale of the family residence" on El Verano Way. The court found, regarding the division of the proceeds from the sale of the residence, that the property "should have been listed and sold in May 2013 due to [Leslie]'s failure to take [Imani] off the loan." Citing the May 2012 stipulation and the 2016 order requiring Leslie to deed the house back to the community, the court found the proceeds of the sale were community property.

The trial court addressed the issues of delay and laches for the period following the 2021 order appointing the clerk of the court elisor and directing the listing of the residence for sale. The court rejected Leslie's argument that Imani unreasonably delayed in enforcing his claim after the 2021 order and that laches barred his claim to a portion of the sale proceeds. It stated that although the 2021 order was not stayed, Leslie had "failed to comply . . . and did not cooperate with the sale of the house," having instead "appealed [the] order and treated the appeal as a 'stay,' " thus contributing to the delay of the sale.

As to the reimbursement claims, the trial court found the *Moore/Marsden* framework inapplicable because "the property was purchased during the marriage and is community property." It further denied both parties' requests for reimbursement under the rubrics articulated in *In re Marriage of Epstein* (1979) 24 Cal.3d 76 (*Epstein*) ), superseded by statute on other grounds as stated in *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 914, and *In re Marriage of Watts* (1985) 171 Cal.App.3d 366 (*Watts*). The court found that although Leslie exclusively made payments on the residence out of her

6

separate funds since Imani's departure, she did so "to preserve and enjoy the asset" and that those payments did not substantially exceed the value of the use of the property and did not warrant reimbursement under *Epstein* for payment of the preexisting community obligations. The court also rejected Leslie's request for reimbursement based on improvements she made to the property. It denied Imani's request for reimbursement under *Watts*, finding that reimbursement would be inappropriate because he did not assert the claim until November 2020, had indicated he was willing to waive any *Watts* charges, and had cooperated to some extent with Leslie in delaying the sale of the home until their daughter left for college.

The trial court declined to make findings on the issues of retirement account divisions and "tax issues, if any, related to the sale" of the residence. On the tax issue, it found that although the parties' briefing "included a discussion about tax consequences in the sale of the home, neither side presented evidence or argument regarding th[o]se consequences at trial." It similarly found that there was no evidence presented on the retirement accounts and ordered that the parties retain a qualified expert to prepare Qualified Domestic Relations Orders (QDROs) and begin working with the expert "within 45 days of receipt" of the statement of decision. The court ordered that the "remaining proceeds from the sale of the home in the amount of approximately $450,568.43 are to be divided equally between the parties after accounting for the $10,000.00 in sanctions previously ordered to be paid out of [Leslie]'s share of the proceeds."

The statement of decision indicated the trial court's rulings were "so ordered." (Capitalization omitted.) The court did not file a separate findings and order after hearing. Leslie appealed from the statement of decision, which she characterized in the notice of appeal as a "[j]udgment after court trial," although the trial court did not issue a judgment.

7

*D. Order to Show Cause and Request for Supplemental Briefing*

After the appeal was filed, this court issued an order to show cause (OSC) directing Leslie to show by letter brief why the appeal should not be dismissed as premature and/or taken from a nonappealable order. In response to counsel's request for clarification, we directed Leslie's counsel to *In re Marriage of Garcia* (2017) 13 Cal.App.5th 1334, 1342–1343. Leslie responded by letter brief addressing the issues of finality and appealability. This court subsequently deferred the OSC, indicated that the final statement of decision does not appear to comply with the one final judgment rule, and ordered Leslie to "provide to this court a judgment reflecting resolution of all issues in the dissolution proceeding, including the division of retirement accounts, in compliance with the one final judgment rule."

In response to the OSC, Leslie asked to be allowed to proceed with the appeal. She attached minute orders from additional proceedings in the trial court regarding the retirement accounts. This court deferred ruling on the OSC for consideration with the appeal. Leslie later filed trial court minute orders, dated January 30 and March 7, 2024, as a "supplemental record" pursuant to the court's deferred OSC. (Capitalization omitted.) Imani also filed a motion to augment the record on appeal, which this court deemed a request for judicial notice, as to the opinion issued in *Butler*, *supra*, H049004 and as to an additional minute order of the trial court dated April 24, 2024. We granted the request as to the court's prior opinion in *Butler* and deferred consideration of the request as to the April 24, 2024 minute order.

After the briefing on appeal was complete, this court requested supplemental letter briefs on jurisdiction. We asked: "(1) Does this court have jurisdiction over the appeal from the April 13, 2023 statement of decision? [¶] (2) If the trial court's April 13, 2023 statement of decision is not appealable, should this court exercise its discretion to treat the appeal as a petition for an extraordinary writ? (See *Olson v. Cory* (1983) 35 Cal.3d 390, 400 (*Olson*).) [¶] (3) Does the April 13, 2023 statement of decision (and/or April

24, 2024 minute order, currently subject to a pending request for judicial notice in this court), contemplate further action by the parties or superior court as to the following items identified in the statement of decision: [¶] a. the retirement accounts; or [¶] b. tax issues related to the sale of the property." We received a response from Leslie (but not from Imani) in response to our request for supplemental briefing, which we summarize below.

## II. DISCUSSION

Leslie raises multiple claims on appeal, which we distill into the following arguments. She contends that (1) the proceeds of the sale of the residence are not community property, (2) reimbursement is warranted based on her separate property payments toward the mortgage, maintenance, improvements, taxes, and insurance on the residence, (3) Imani's claim is barred by laches, and (4) the trial court erred in failing to address her request for reimbursement for capital gains taxes on the sale of the residence. Before deciding these issues, we address our jurisdiction.

### A. *Appealability of the Final Statement of Decision*

" 'The existence of an appealable judgment is a jurisdictional prerequisite to an appeal.' " (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 418 (*Grimes & Mou*).) Before addressing Leslie's claims on appeal, we must first decide whether the trial court's ruling on the division of proceeds of the sale of the residence, notwithstanding the decision to withhold findings on the issues of taxes and retirement accounts, is appealable.

Rule 8.204 of the California Rules of Court requires an appellant's opening brief to "[s]tate that the judgment appealed from is final, or explain why the order appealed from is appealable." (*Id*., rule 8.204(a)(2)(B).) The required statement of appealability serves not only to require "an appellant to make the preliminary and fundamental determination that the order appealed from is, in fact, an appealable order or judgment" but to demonstrate "both to other parties and to the court of appeal, before work on the

9

merits of a case is begun, why the order is appealable." (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 556 (*Lester*), italics omitted.)

Because Leslie's opening brief states inaccurately that the statement of decision is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a)(1), which authorizes an appeal taken in pertinent part from "a judgment, except an interlocutory judgment," we issued the OSC and requested supplemental briefing on jurisdiction.[6] Leslie contends in her supplemental letter brief that the statement of decision is appealable under the " 'collateral order doctrine' " as an interlocutory order that serves as the final determination of a collateral matter and directs the payment of money or performance of an act. In the alternative, Leslie argues that, if the statement of decision is not appealable, we should treat the appeal as a petition for an extraordinary writ because Leslie has "a clear right to judgment in her favor" and it would be contrary to the interests both of judicial economy and significantly burdensome to Leslie to await a final order on the "residual issues" and refile an appeal at a later time.

" 'California is governed by the "one final judgment" rule which provides "interlocutory or interim orders are not appealable, but are only 'reviewable on appeal' from the final judgment." [Citation.] The rule was designed to prevent piecemeal dispositions and costly multiple appeals which burden the court and impede the judicial process.' " (*Grimes & Mou*, *supra*, 45 Cal.App.5th at p. 418; see *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697.)

An "exception to the 'one final judgment' rule codified in Code of Civil Procedure section 904.1 is the so-called collateral order doctrine. Where the trial court's ruling on a collateral issue 'is substantially the same as a final judgment in an independent

---

[6] We reiterate to appellant's counsel the fundamental importance of addressing appealability at the outset. (*Lester*, *supra*, 84 Cal.App.4th at p. 557; *Madrigal v. Hyundai Motor America* (2023) 90 Cal.App.5th 385, 394, fn. 5 (*Madrigal*), review granted Aug. 30, 2023, S280598; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2024) ¶ 2:5.)

proceeding' [citation], in that it leaves the court no further action to take on 'a matter which . . . is severable from the general subject of the litigation' [citation], an appeal will lie from that collateral order even though other matters in the case remain to be determined." (*Lester*, *supra*, 84 Cal.App.4th at p. 561; *Grimes & Mou*, *supra*, 45 Cal.App.5th at p. 418.) An interlocutory order is appealable under the collateral order doctrine when it is "collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act." (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.)

Applying that doctrine here, we must decide whether the trial court's ruling in the statement of decision requiring Leslie to transfer one-half of the proceeds of the sale of the residence to Imani is (1) collateral to the subject matter of the litigation, (2) final as to the collateral matter, and (3) directs the payment of money by the appellant or the performance of an act by or against appellant. (*Madrigal*, *supra*, 90 Cal.App.5th at p. 395; *Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1016.)

We conclude the trial court's ruling on the division of the sale proceeds ordered in the statement of decision is not appealable under the collateral order doctrine. The statement of decision ordered the proceeds of the sale ($450,568.43) be divided equally between the parties after accounting for the $10,000 in previously ordered sanctions, to be paid out of Leslie's share of the proceeds. However, the court declined to rule on Leslie's requests for Imani to reimburse and indemnify her for the capital gains taxes resulting from the sale of the residence and for the division of Imani's retirement accounts. The court ordered the parties to retain a qualified expert to prepare QDROs regarding the retirement accounts and scheduled related proceedings, which have gone forward.[7]

---

[7] As noted in our discussion of this court's OSC and request for supplemental briefing (*ante*, pt. I.D.), both parties have brought to our attention the continued

11

Leslie argues that these omissions from the statement of decision (as to the tax liability and the pension account) do not render the statement of decision nonappealable. She points out that the trial court did not reserve the tax issue for further consideration and asserts that the proceedings pertaining to the distribution of the retirement pension do not affect the ordered division of the sales proceeds currently pending on appeal.

We disagree. Although the statement of decision purports to fully address and dispose of the outstanding question of property distribution with respect to the home sale proceeds, the unresolved issues of capital gains tax liability and/or disputed retirement pension division may potentially affect the final distribution of property. To construe the statement of decision as an appealable, collateral order on the limited matter of the division of the sale proceeds would artificially sever the remaining outstanding issues in the case and subject this court to piecemeal appeals each time the trial court resolves another issue in the property division. Moreover, the trial court has carried out additional factfinding proceedings on the retirement pension issue, and we anticipate the court will enter a final judgment once all outstanding property division issues have been addressed. (See *Grimes & Mou*, *supra*, 45 Cal.App.5th at p. 419 [concluding the collateral order doctrine does not apply where the trial court's ruling was not " 'truly "distinct and severable from the general subject of the litigation" ' " but instead "a necessary step to the ultimate division of the parties' entire marital estate"].)

We nevertheless agree with Leslie that this court may treat the appeal as a petition for writ of mandate. A panel of this court previously explained the factors guiding this determination, derived from the California Supreme Court's decision in *Olson*, *supra*, 35

proceedings in the trial court on the issue of the retirement pension accounts. Specifically, Leslie filed as a "supplemental record" the trial court's minute orders dated January 30 and March 7, 2024, and Imani filed a request for augmentation of the trial court's minute order dated April 24, 2024. We construe both appellant's and respondent's requests as requests for judicial notice of the trial court's minute orders of January 30, March 7, and April 24, 2024, and grant the requests. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

Cal.3d 390. "The California Supreme Court in *Olson* determined that it was appropriate to treat an appeal as a petition for a writ of mandate when there was no adequate remedy at law, 'the issue of appealability was far from clear in advance,' the records and briefs included the necessary elements for a petition for a writ of mandate, there was nothing to indicate that the trial court would appear separately or become more than a nominal party, and dismissing the appeal rather than exercising the court's discretion to reach the merits would be ' " 'unnecessarily dilatory and circuitous.' " ' " (*Global Protein Products, Inc. v. Le* (2019) 42 Cal.App.5th 352, 365, quoting *Olson*, at p. 401.)  Most of these elements are present in this instance and favor a determination on the merits.  The question of appealability as a collateral order was not clear in advance, the records and briefs include the necessary elements for consideration as a writ petition, and failing to reach the issues of the division of the sale proceeds and whether that division must take into account the capital gains tax implications would cause unnecessary delay.  Under these circumstances, we exercise our discretion and treat Leslie's appeal as a petition for a writ of mandate.

We turn to the merits of Leslie's contentions.

*B.  Community Property Interest in the Sale Proceeds*

Leslie contends there is no community property interest in the sale proceeds because at the time of the parties' separation, the fair market value of the community equity in the residence was negative (approximately –$132,000).  She asserts that due to the negative equity at the time, if the parties had sold the residence within a reasonable time of the one-year deadline (as required by the May 2012 stipulation), each party would have been allocated an approximate loss of $66,000.  Leslie argues that because all the positive equity in the home is attributable to her separate property payments subsequent to separation, there is no community property equity in the sale proceeds.  She maintains that case authority supports her position, and the trial court erred in refusing her request to allocate to the community only the equity value of the property as of the 2011

13

separation date and by valuing the property at the time of trial rather than at the time of separation. She also argues the trial court deemed the sale proceeds community property as "punishment" for Leslie's failure to comply with prior orders to deed the property back to the community, effectively sanctioning her for one-half of the sale proceeds, or $230,284.22.

Leslie's arguments miss the mark. The question of the community property interest in the residence has already been settled. As determined in the prior appeal, when Leslie failed to satisfy the conditions of the May 2012 stipulation within 12 months, she was obligated to deed the residence back to the community. Accordingly, by the parties' written agreement, the residence was community property as of May 2013. (*Butler*, *supra*, H049004.) Furthermore, this court specifically rejected Leslie's prior attempt to challenge the community property characterization of the residence. (*Ibid.*) It held, "The trial court did not err in characterizing the residence as community property, which it reverted to as of May 2013." (*Ibid.*)

The question on remand, which had been reserved for future determination, was not the community property characterization of the residence but "[w]hether any of the proceeds will be allocated to Imani after any 'Moore-Marsden claims' and any other reimbursement issues are resolved." (*Butler*, *supra*, H049004.) Consistent with this holding, the trial court, in the statement of decision currently before us on appeal found that, based on the May 2012 stipulation and subsequent court orders requiring Leslie to deed the house back to the community, "the sales proceeds [were] community property."

Leslie attempts to reargue the characterization of the property based on *In re Marriage of Mohler* (2020) 47 Cal.App.5th 788 (*Mohler*) and *In re Marriage of Bonvino* (2015) 241 Cal.App.4th 1411 (*Bonvino*). She variously asserts that community equity in the property ceased when community contributions ceased, that the trial court erred in its 2021 order by refusing her request to assess equity value as of the date of separation rather than trial, that the character of the property is determined by the lender's intent

14

when it modified and later refinanced the loan based on only Leslie's credit, and that Leslie's $431,275.92 in payments toward the residence was her separate property, never transmuted, and thus cannot be allocated to the community. These arguments overlook the prior determination of this court in *Butler*, *supra*, H049004, and conflate the issues of community property interest with the allocation of the proceeds of the sale and her claim for reimbursement based on her separate property contributions.

Furthermore, this precedent does not assist Leslie. She cites *Mohler* for the proposition that community equity interest does not increase once community assets cease paying down the property's principal. However, the property in *Mohler* was *separate* property purchased by the husband before the marriage, and the community later gained an interest in the property by making payments toward its principal during the marriage. (*Mohler*, *supra*, 47 Cal.App.5th at p. 791.) After the parties separated, the husband continued living in the property and used his separate property to pay down the principal, which the trial court applied to increase the community's proportional interest in the property. (*Id*. at p. 794.) The Court of Appeal reversed, holding the husband's postseparation reduction of loan principal using his separate assets did not increase the community's equity interest in the property. (*Id*. at p. 795.) The Court of Appeal nevertheless held that it was appropriate for the trial court to consider whether the community, which maintained only a beneficial partial interest in the property, was owed compensation under *Watts* for the husband's exclusive use of the property. (*Id*. at p. 797.)

*Mohler* sheds no light on the question of valuing a party's separate property payments, after separation, toward the principal of a community asset, even as it reinforces the relevance of *Watts* to requests for community compensation when a community asset is used exclusively by one party postseparation. (*Mohler*, *supra*, 47 Cal.App.5th at p. 797.) *Bonvino* similarly is inapposite in that it pertains to property acquired during the marriage with both separate and community funds, where the

15

property was not expressly transmuted to the community and the parties continued to hold their proportionate interest based on the funds contributed. (*Bonvino*, *supra*, 241 Cal.App.4th at p. 1417.)

Leslie's assertion that applying the principles of contract law (i.e., assessing a remedy based on contract damages for Leslie's breach by failing to deed the property back to the community under the May 2012 stipulation) is similarly misplaced. Leslie suggests that "principles of contract law also require an equity valuation as of 5/15/13" because the appropriate remedy for breach of contract is to put the parties in the same position they would have been in but for the breach and does not allow a party to recover more in damages than she could have recovered by full performance. She argues that because a valuation at the time of the alleged breach in 2013 would have required the parties to dispose of the property by a short sale (since the property was " 'under water' " by more than $130,000), Imani actually benefited from her not deeding the property to the community and complying with the obligation to sell at that time. Leslie suggests that Imani purposely delayed filing the request for order on the agreement until January 2016 so that he could benefit from Leslie's efforts to pay down the debt on the property and create positive equity. Under these circumstances, she argues that Imani cannot now avoid the loss that he would have suffered by the contractually required short sale in 2013.

We reject these arguments because, at this juncture, contract law does not control the assignment of equity or allocation of proceeds in the case. As this court explained in its prior opinion with respect to the continuing application of Family Code section 2550: "The May 2012 stipulation was a 'written agreement of the parties,' but it did not provide that the residence would be [Leslie's] separate property if she failed to satisfy the stipulation's conditions within the stipulated 12-month period. When she failed to satisfy those conditions within the 12-month period, she was obligated to deed the residence back to the community." (*Butler*, *supra*, H049004.)

The remedy provided for in the agreement was if Leslie failed to fulfill the conditions of the May 2012 stipulation was to deed the property back to the community. Subsequent trial court orders enforced the terms of the stipulation and required Leslie to deed the property to the community. The trial court in its statement of decision correctly cited Family Code section 2550, providing for equal division of the community estate "[e]xcept upon the written agreement of the parties," in addressing the division of proceeds from the sale of the home. Leslie's claim that the court abused its discretion by rejecting her separate property claim as a sanction for her previously sanctioned conduct, is entirely unsupported by the record in this case.

Leslie's assertion that the trial court misconstrued Family Code section 2550 in allocating the property division based on the date of sale, rather than the date of separation in 2011, is similarly unsupported by the law. Absent the trial court finding good cause for an alternative valuation date, Family Code section 2552, subdivision (a) provides that "the court shall value the assets and liabilities as near as practicable to the time of trial." A good cause showing is one that allows the court "to accomplish an equal division of the community estate of the parties in an equitable manner." (*Id*., subd. (b).) Applying these principles, "California appellate courts have concluded the proper valuation date for a community property residence for purposes of a dissolution proceeding is the date of trial unless there is some reason which renders this result inequitable." (*In re Marriage of Sherman* (2005) 133 Cal.App.4th 795, 800.) Citing the 2021 order (already affirmed in *Butler*, *supra*, H049004) Leslie contends that the trial court misapplied Family Code section 2552 when it found no basis for an alternative valuation date and erroneously "stood by" this legal interpretation and conclusion in the statement of decision. However, given the court's findings (discussed *post*) that Leslie's overall monthly payments on the residence, including maintenance and improvements, only minimally exceeded the fair rental value and that she enjoyed the benefit of

17

continuing to live in the home, we decide substantial evidence in the record supports the court's division of proceeds decision.  (See *Marriage of Sherman*, at p. 801.)

## C.  Allocation of Sale Proceeds and Reimbursement Claims

Leslie contends that if the proceeds of the sale of the residence are deemed to be community property, she should be entitled to reimbursement for the $431,275.92 in separate property that she spent on maintenance, improvements, mortgage, taxes, and insurance for the residence from the parties' separation in 2011 to the October 2022 sale. She points out that through these separate property payments, she reduced the principal on the mortgage by $51,964.77, while neither Imani nor the community made any contribution to the residence since October 2011.  Leslie argues that the trial court erred in ordering no reimbursement based on the exception in *Epstein* for a spouse utilizing the community property and should have ordered reimbursement under *Watts*.

Imani does not dispute the fact or amount of Leslie's separate property expenditures on the residence but contends she misunderstands the principles that govern reimbursement for a party's postseparation payments for a community asset.

The relevant legal principles are well established.  The trial court has broad authority to order reimbursement "for debts paid after separation but before trial." (Fam. Code, § 2626.)  A party must make an affirmative showing of the right to reimbursement which "is not automatic, but involves the consideration of [] a variety of factors." (*In re Marriage of Feldner* (1995) 40 Cal.App.4th 617, 625; see *In re Marriage of Reilley* (1987) 196 Cal.App.3d 1119, 1124 (*Reilley*).)

In *Epstein*, our Supreme Court held that a party's expenditure of separate funds after separation to meet community obligations is generally entitled to reimbursement out of the community property.  (*Epstein*, *supra*, 24 Cal.3d at pp. 80, 84.)  However, " '[r]eimbursement should not be ordered if payment was made under circumstances in which it would have been unreasonable to expect reimbursement.' " (*Id*. at p. 84.)  One such circumstance recognized in *Epstein* is "where the payment was made on account of

18

a debt for the acquisition or preservation of an asset the paying spouse was using and the amount paid was not substantially in excess of the value of the use." (*Id*. at pp. 84–85.)

The latter situation may be addressed by so-called *Watts* charges: When a spouse postseparation has exclusive use of a community asset, like the family residence, the community may seek reimbursement from that spouse for the reasonable value of that use. (*Watts*, *supra*, 171 Cal.App.3d at p. 374; *In re Marriage of Garcia* (1990) 224 Cal.App.3d 885, 890.) "*Watts* charges equitably compensate the community for one spouse's use of a community-owned home." (*Mohler*, *supra*, 47 Cal.App.5th at pp. 790–791.) To the extent "the monthly payments equal or exceed the reasonable value of the asset's use, the spouse may satisfy the duty to compensate the community for use of the asset by making the monthly finance payments from his or her separate property." (*Garcia*, at pp. 890–891.) " '[R]eimbursement will usually not be ordered for payments on obligations on the family home made by the spouse remaining in the home.' " (*Id*. at p. 891; see also *Hebbring v. Hebbring* (1989) 207 Cal.App.3d 1260, 1271 [stating that for a community asset being used by one spouse between separation and trial, "no reimbursement should be ordered unless the amount of the debt payment greatly exceeds the value of the use of the asset"].) As with *Epstein* credits, "[t]he trial court has discretion, based on equitable considerations, as to whether to impose *Watts* charges and in what amount." (*Mohler*, at p. 797.)

Applying these principles to the facts established at the bench trial on remand, the record does not support Leslie's claim that the trial court erred in refusing to grant her request for reimbursement. Leslie relies in part on her argument that "until the [statement of decision] there had never been a determination that the property, much less the sale proceeds were community property" and until that time, "the record can be read as Leslie occupying her separate property." Leslie's interpretation of the record ignores the trial court's prior orders and the prior decision on appeal.

19

As set forth *ante*, these orders establish that the property has long been a community asset. These include the trial court's findings and order in 2016 (finding Leslie had not removed Imani from the mortgage and requiring her to deed the property "to the community immediately"), in 2019 (declining to issue an order "regarding transfer of title to the community" since "that order has existed since April, 2016"), and in 2021 (finding Leslie failed to comply with prior orders "by failing to deed the property back to the community" and denying Leslie's "request to characterize the property . . . as her separate property"). This court's affirmance of the trial court's findings and order in 2021 and express holding that the residence reverted to community property as of May 2013 further establishes that the community property status of the residence had been resolved. (*Butler*, *supra*, H049004.) Given this record of decisions stretching back to May 2016, Leslie's professed belief that she was occupying her separate property is unfounded.

Leslie points to the maintenance and improvement expenditures, which she asserts she would have made as reasonable landlord costs, even if she had been renting the property to a third party. She argues there is no evidence the expenditures were unreasonable. She contends the trial court disallowed reimbursement because it found that various improvements were for Leslie's enjoyment of the property, ignoring the fact that certain expenditures were necessary to preserve the property and ensure habitability. Taking into account the procedural history and all relevant factors considered by the trial court, we are not persuaded that the court abused its discretion in denying Leslie's *Epstein* claim for reimbursement.

The trial court found that Leslie's monthly payments, including maintenance and improvement costs, averaged $3,267, and that the monthly fair rental value of the residence, according to Leslie's real estate expert, was $2,960. It found that Leslie's payments "to preserve and enjoy the asset" were not substantially in excess of the value of her use of the property (the difference being approximately $300) and would have

20

been significantly reduced if she had complied with the prior court orders. This ruling is consistent with our Supreme Court's direction in *Epstein* that reimbursement should not be ordered if separate property payments on a community debt made for purposes of acquisition or preservation of the asset occurred while the paying spouse was using the community asset " 'and the amount paid was not substantially in excess of the value of the use.' " (*Epstein*, *supra*, 24 Cal.3d at p. 85.) It is further consistent with *Epstein*'s directive not to order reimbursement " 'if payment was made under circumstances in which it would have been unreasonable to expect reimbursement.' " (*Id.* at p. 84.)

The trial court considered Leslie's request for reimbursement based on the improvements she made to the property. It weighed several factors, including the nature and reasonableness of the improvements, whether Leslie sought Imani's consent for the improvements, the timing of certain improvements (including after the May 2016 trial court order requiring her to deed the property back to the community), and any evidence that the improvements increased the house's fair market value. The court found that Leslie had not proffered evidence to show the improvements increased the sale price of the house and denied her request for reimbursement based on the cited factors.

The trial court's findings are supported by the evidence submitted at the hearing and reflect the court's reasoned consideration of the relevant equitable and evidentiary factors. (*Reilley*, *supra*, 196 Cal.App.3d at p. 1124; see also *Mohler*, *supra*, 47 Cal.App.5th at p. 797.) The court also rejected Imani's request for reimbursement under *Watts*, having found the difference between the fair rental value and Leslie's monthly expenditures was "minimal" and based on other equitable factors, including Imani's delay in seeking reimbursement. These decisions, too, were supported by substantial evidence and did not amount to an abuse of discretion.

We conclude the trial court did not abuse its discretion in denying Leslie's reimbursement claim.

*D. Laches*

Leslie contends that Imani's claim for his community property share of the sale proceeds is barred by laches. She asserts various arguments, including that Imani unreasonably delayed seeking relief from her failure to return the property to the community as of May 2013, did not pursue enforcement of the May 2012 stipulation until filing his request for an order in January 2016 (thereby "waiting until there was positive equity in the property to act"), and that this court's prior decision on the issue of laches is speculative and unsupported by the record. She also maintains the trial court—in its statement of decision presently before us on appeal—erred by disregarding her renewed laches argument that Imani unreasonably delayed after obtaining the 2021 order, which "unequivocally gave Imani all the rights and tools to enforce his judgment, when it appointed the clerk of the [c]ourt elisor to sign any documents" needed to carry out the sale.

Most of the arguments Leslie raises are beyond the scope of our review of the trial court's statement of decision on the division of sale proceeds. The determination by this court upholding the trial court's 2021 ruling that Imani's delay in seeking to enforce the sale of the residence did not warrant forfeiture of his rights is no longer at issue. (See *Butler*, *supra*, H049004.) The question before us is limited to whether the trial court erred in finding that Imani "did not neglect his rights with respect to enforcing the sale of the property after the [c]ourt's [o]rder in 2021 and laches does not bar his claims." In reaching its decision, the court noted that although Leslie acknowledged the 2021 order was not stayed, she "failed to comply . . . and did not cooperate with the sale of the house" but instead filed an appeal of the 2021 order "and treated the appeal as a 'stay.'" The court found that Leslie's actions "contributed to the delay of the sale."

Leslie disputes the trial court's characterization of her actions but does not establish the court committed a factual or legal error. There is no reporter's transcript for this court to review with respect to the evidence at the bench trial supporting the court's

22

determination. We must therefore adhere to the basic principles of appellate procedure in presuming that the trial court considered only admissible evidence[8] regarding each side's alleged delay in proceeding with the sale and that the court's findings are supported by sufficient evidence. (See, e.g., *Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 606 [appellate court ordinarily presumes that a trial court in a bench trial considered only admissible evidence]; *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1526 [same]; *In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992 ["Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*."]; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324 [same].)

Leslie has not shown that the trial court erred in excluding certain evidence as inadmissible and has not offered any legal authority to support her claim that any alleged delay by Imani was unreasonable and prejudiced Leslie by further delaying the sale. (See *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 68 [defendant asserting laches defense must show there was " 'unreasonable delay plus . . . prejudice to the defendant resulting from the delay.' "].) Moreover, the existence of laches is generally considered " ' "a question of fact to be determined by the trial court in light of all of the applicable circumstances." ' " (*Estate of Kampen* (2011) 201 Cal.App.4th 971, 997.) The circumstances here, which involve no fewer than three court orders requiring Leslie to deed the residence back to the community and proceed with its sale in accordance with the May 2012 stipulation, raise serious doubts about Leslie's claim that Imani's right to enforcement of the 2021 order is barred by laches.

---

[8] The settled statement filed in connection with the appeal provides limited information about the proceedings with respect to laches. It states that the trial court excluded Leslie's proffered evidence in support of her laches argument, including e-mail evidence between the parties' attorneys "regarding [Imani]'s delay in enforcing his judgment."

We conclude that Leslie has not carried her burden on appeal to establish that any delay by Imani in enforcing the 2021 order to sell the residence precludes the trial court's decision to order the proceeds of the sale equally divided between the community.

*E. Tax Liability*

Leslie contends the trial court erred in failing to address the allocation of capital gains tax on the sale of the residence. Citing *Epstein*, she argues the court was obliged to account for the taxes on the ordered sale of the property and asserts that Imani should be responsible for all the capital gains tax, including by reimbursing and indemnifying Leslie for any tax she is charged. She acknowledges, however, that in her briefing for the 2023 bench trial, she requested only that the court order each party be held responsible for the tax on any proceeds allocated to that party. In her supplemental letter brief, she anticipates that the federal and state taxes on any capital gains will become due in the next two to five years, and, absent court order, she will be liable for all capital gains even though one-half of the sale proceeds has been allocated to Imani.

Imani counters that the issue of tax liability was not addressed at trial (though it was raised) and argues it is not possible to resolve the issue on appeal. He raises several potential problems with Leslie's request to allocate the tax liability to him. First, he notes there is no evidence in the record to show that she complied with the trial court's orders to deed the property back to the community, and that, when the property was sold, it was still in her name. Consequently, he maintains the federal and state tax agencies will look to her for payment of the capital gains on the sale, and pursuant to statute, the liability should be assigned, without offset, to the spouse whose act or omission provided the basis for that liability. (Fam. Code, §§ 1000, subd. (b)(2), 2627.) He further asserts that each party would have been entitled to a $250,000 exclusion if she had complied and deeded the property to the community, but instead the "family lost $250,000.00 in capital gains exclusion because of [Leslie's] refusal to deed the property back." Imani argues that under the present circumstances, due to Leslie's failure to deed the property back to

the community, "she is entitled to a $250,000.00 gain exclusion but [Imani] is not." Imani cites, albeit without analysis or explanation, provisions of title 26 of the Code of Federal Regulations related to federal tax exclusions that may apply under the circumstances.

We note at the outset that Leslie's argument is not fully developed or supported by meaningful citation to legal authority. (*In re Marriage of Carlisle* (2021) 60 Cal.App.5th 244, 255.) Her conclusory reference to *Epstein* is unaccompanied by legal argument or explanation of the specific tax consequences she faces. "An appellate brief 'should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " (*In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1164; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

Despite these deficiencies in her briefing, we elect not to treat the point as forfeited. We agree that there is precedent for requiring the trial court to address the tax consequences of community property division under circumstances similar to those here. California courts have held that it is appropriate for the trial court to consider the tax consequences of a community property division "when there is proof of an immediate and specific tax liability." (*In re Marriage of Clark* (1978) 80 Cal.App.3d 417, 422; see also *In re Marriage of Czapar* (1991) 232 Cal.App.3d 1308, 1315.) On the other hand, "[t]he trial court need not speculate on such possibilities, . . . or consider tax consequences that may or may not arise after the division of the community property." (*Weinberg v. Weinberg* (1967) 67 Cal.2d 557, 566; see *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 750.) We consider several cases illustrative of these principles.

The California Supreme Court in *Epstein* addressed a situation in which the trial court ordered the community property family residence sold and the proceeds divided, awarding the wife a larger share of the sale proceeds to equalize the husband's receipt of a substantially greater value in the community's personal property. (*Epstein*, *supra*, 24

Cal.3d at p. 86.) Our high court agreed with the wife on appeal that because the trial court's order did not address the issue of capital gains tax liability as a result of the sale, the "equalization of community property shares before taxes may result in her receiving less than half of the net value of community property remaining after payment of taxes." (*Id.* at p. 87.) The court held that the "division of community property should take account of any taxes actually paid as a result of the court-ordered sale of the residence." (*Ibid.*) The court further explained that a remand was not necessary to achieve this result where the trial court's order already directed the balance of house sale proceeds (after reimbursement to the husband on another issue) to "be divided between the parties in a fashion which will equalize the division of the parties' community property" (*id.* at p. 88). Instead, the court "construe[d] the judgment to provide that the balance of the proceeds be divided so as to equalize the division of the community property after payment of any capital gains tax incurred upon the sale of the residence" (*id.* at pp. 88–89) and directed the trial court on remand to "so apply the judgment." (*Id.* at p. 89.)

Our high court in *Epstein* provided guidance for courts ordering the division of community assets despite the uncertain tax consequences that result from the court ordered sale of a community asset. It explained: "In cases such as the instant matter involving the sale of a family residence, the uncertainty concerning the amount of capital gains tax liability stems from provisions in state and federal tax law which defer liability to the extent that the proceeds from the sale are reinvested in a new residence within one year of the sale. [Citations]. That uncertainty, however, will be resolved within a year or two of the court's decree. In the present case, the amount of the tax liability may have been fixed by events pending the decision of this appeal, so the trial court, upon the remand of this case made necessary by our holding on the husband's right of reimbursement, can recognize that liability in dividing the proceeds of the sale. If not, and in similar cases arising in the future, the court *can take account of tax liability* by *providing that the liability incurred, if any, is owed equally by both spouses*. In unusual

cases, it could retain jurisdiction to supervise the payment of taxes and adjust the division of the community property." (*Epstein*, *supra*, 24 Cal.3d at p. 88, fns. omitted & italics added.)

In re Marriage of Davies (1983) 143 Cal.App.3d 851 (*Davies*) took a similar approach. *Davies* involved an appeal from an interlocutory judgment of dissolution in which the trial court refused a request by the wife to retain jurisdiction to address the capital gains tax liability arising from the sale of the community property home. (*Id*. at p. 854.) The judgment ordered the family residence to be sold and the sale proceeds equally divided (after requiring the wife to pay $2,615 equalization out of her proceeds), after which husband purchased a new residence. (*Ibid*.) The wife wanted to purchase a residence but was unsure if she could do it soon enough to obtain a deferral of the capital gains taxes on her proceeds from the family home sale. (*Id*. at p. 855.) She asked the trial court to retain jurisdiction, arguing that her ex-husband's purchase of a replacement home "virtually assured him a deferral of capital gains taxes on his share of the proceeds, while she may not be financially able to purchase a second home within the required two-year statutory period and defer her taxes." (*Ibid*.) On appeal, she asserted the trial court should have (1) expressly ordered an equal division of the taxes arising from the sale of the family home, and (2) retained jurisdiction for two years after the sale to ensure the tax liability actually incurred was equally divided between the parties. (*Ibid*.)

The appellate court agreed in part with the wife and modified the judgment "to provide any tax burdens originating from the sale of the family residence be equally shared by the parties." (*Davies*, *supra*, 143 Cal.App.3d at p. 856.) The court recognized that "[i]n cases where proceeds of the sale will be unequally distributed in order to equalize the uneven division of other community assets, each party is responsible for one-half of all the taxes incurred by virtue of the sale, regardless of each party's actual share in the sale proceeds, unless the trial court chooses to award to one party all of the tax liability actually incurred to further offset the division of other community assets." (*Id*. at

pp. 856–857.) The court nevertheless rejected the contention that the trial court must retain jurisdiction to ensure equal allocation of the tax burdens is accomplished, distinguishing tax *consequences* from tax *liability*. (*Id*. at p. 858.) It explained that while the trial court was required to "consider tax consequences emanating from its order dividing the existing community assets provided a showing of '*immediate and specific*' tax liability [wa]s sufficiently made" (*id*. at p. 857), a party's ability to defer the capital gains tax was inherently uncertain and "solely dependent upon factors totally *unrelated* and *immaterial* to the achievement of an otherwise equal division of the community assets" (*id*. at p. 858).

The appellate court noted that none of the factors (i.e., individual income, ability to borrow money, individual savings, etc.) that determines each party's financial ability to acquire a replacement home within the statutory two-year limit "hinges upon the equal distribution of community assets at the time of dissolution." (*Davies*, *supra*, 143 Cal.App.3d at p. 858.) The court reasoned that the "mere possibility either party may qualify for deferral of payment of the tax liability he or she incurs by virtue of the court ordered sale of the family residence is not a tax consequence which should be recognized by the trial court in achieving an equal division of existent community property." (*Ibid*.) By contrast, it held that "an equal allocation of the *tax liability*, if any, attending the sale of the family home is necessary to the attainment of parity in the division of community assets since the proceeds will be used to equalize the overall distribution of the community property." (*Ibid*.) The court stressed that "once the trial court's judgment is modified to provide for an equal allocation of the tax burdens, if any, resulting from the court ordered sale of the family home, there is no need for further retention of jurisdiction since the court's duty to accomplish an 'equal division' of the parties' community property . . . is fulfilled." (*Ibid*.)

In another example involving the successful deferral of capital gains tax by one party but not the other, the Court of Appeal in *In re Marriage of Harrington* (1992) 6

28

Cal.App.4th 1847 (*Harrington*) rejected the wife's argument that the trial court should have required the husband to pay one-half of her capital gains taxes that had become due. (*Id*. at p. 1849.) The husband and wife in *Harrington*, after dissolution, sold their community property marital residence at a profit and divided the proceeds equally. (*Ibid*.) He acquired another residence within two years of the sale, successfully deferring recognition of capital gains tax on the profit he realized from sale of the family residence. (*Id*. at p. 1850.) Within the same period, she purchased a condominium and invested in improvements, thus deferring recognition of capital gains tax on only part of the profits from the sale of the marital residence and incurring a capital gains tax of $52,000. (*Ibid*.) The wife unsuccessfully sought an order requiring the husband to pay one-half of her capital gains tax, arguing that an equal division of community property assets and liabilities compels equal liability for capital gains taxes. (*Ibid*.)

Citing *Davies*, the appellate court in *Harrington* explained that the requirement to divide community assets upon dissolution so that each party receives an equal share after deduction of community liabilities does not require the trial court to speculate about what either party may do with his or her share and whether they defer recognition of or incur capital gains tax. (*Harrington*, *supra*, 6 Cal.App.4th at p. 1851.) The court differentiated the notion that a trial court "account for the possibility that either spouse may or may not be able to postpone recognition of capital gains taxes by purchasing a replacement residence within two years" (*id*. at p. 1852) from the situation in *Epstein*, which addressed the unequal tax burden caused by "unequal distribution of proceeds from the sale of a community asset in order to equalize the uneven division of other community assets." (*Ibid*.) Thus, the Court of Appeal held "the trial court's order imposing tax liability upon each party for his or her share of the capital gain was proper as a matter of law." (*Ibid*.)

Applying the principles set forth in *Epstein* and subsequent appellate decisions to the circumstances of this case, we understand Leslie's argument on appeal to concern the

29

unequal tax burden arising from the implied fact that the residence (although a community asset) was held exclusively in her name at the time of sale. Like in *Epstein*, *Davies*, and *Harrington*, the tax burden is ascertainable based on the taxable event (sale of the residence) and bears no connection to uncertain tax consequences that may or may not arise depending on what Leslie does with her one-half of the proceeds. (See *Epstein*, *supra*, 24 Cal.3d at p. 87 [noting "the taxable event, the sale of the residence, occurs as a result of the enforcement of the court's order dividing the community property"]; *Harrington*, *supra*, 6 Cal.App.4th at p. 1851 [stating that "a taxable event—sale of residential real property—occurred during dissolution proceedings" and "[e]ach party is equally liable for any income taxes incurred on his or her capital gain"].)

Although it is not the case that either party here actually received a larger share of the proceeds of the sale of the house (apart from the $10,000 Leslie must pay for the prior sanctions) at division, the possibility that the entire tax obligation could be attributed to Leslie might ultimately have the same effect. (See *Davies*, *supra*, 143 Cal.App.3d at p. 857.) By declining to address the question of a potentially unequal tax burden arising from the sale of the residence, the statement of decision fails to effectuate the equal division of the community property asset that the trial court intended when it ordered the proceeds from the sale of the home to be "divided equally between the parties" (after accounting for the $10,000 in sanctions to be paid by Leslie out of her share of the proceeds). We agree with Leslie that it was error for the trial court on these facts to decline to specifically address the issue of tax liability with respect to the sale of the community property.

Taking guidance from *Epstein* and *Davies*, we understand the trial court's order dividing the proceeds of the sale of the residence to mean that each side must bear an equal share of the tax burden, if any, that results from the sale—even if the specific tax consequences of the sale are yet unknown. (See *Epstein*, *supra*, 24 Cal.3d at p. 88

[directing trial courts to "take account of tax liability by providing that the liability incurred, if any, is owed equally by both spouses"].)

We will therefore remand this matter to the trial court solely for the court to specify an equal allocation of the tax liability as necessary to ensure parity in the division of the proceeds of the sale of the community asset, after accounting for the $10,000 in sanctions owed by Leslie. (See *Davies*, *supra*, 143 Cal.App.3d at p. 858.) We leave to the trial court whether to make its determination based on the existing record or whether it should consider additional evidence, and whether to retain jurisdiction to oversee the division of proceeds after accounting for the allocation of the tax burden.

## III. DISPOSITION

The petition for writ of mandate is granted in part. Let a peremptory writ of mandate issue directing respondent court to vacate its April 13, 2023 final statement of decision insofar as that decision does not address the allocation of capital gains tax liability on the sale proceeds, and to enter a new statement of decision specifying an equal allocation of the tax liability as necessary to ensure equal division of the proceeds of the sale of the community asset, after accounting for the $10,000 in sanctions owed by Leslie. (See *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 88–89; *In re Marriage of Davies* (1983) 143 Cal.App.3d 851, 856–858; *In re Marriage of Harrington* (1992) 6 Cal.App.4th 1847, 1852.)

In the interests of justice, the parties shall bear their own costs in this original proceeding. (Cal. Rules of Court, rule 8.493(a)(B).)

31

_____
            Danner, Acting P. J.

WE CONCUR:

_____
Wilson, J.

_____
Bromberg, J.

**H051113**
***Butler v. Superior Court***